UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC., a Delaware corporation; and MICRON SEMICONDUCTOR PRODUCTS, INC., an Idaho corporation<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NETLIST, INC., a Delaware corporation,<br><br>　　　　Defendant. | Case No. 1:24-cv-00081-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are a Motion to Remand (Dkt. 19) and a Motion to Seal (Dkt. 17) filed by Plaintiffs Micron Technology, Inc., and Micron Semiconductor Products, Inc. (together, "Micron"), and a Motion to Dismiss or Transfer (Dkt. 12) filed by Defendant Netlist, Inc. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court GRANTS Micron's Motion to Remand and Motion to Seal and DENIES Netlist's Motion to Dismiss or to Transfer as MOOT.

## II. BACKGROUND

### A. Factual Background

Micron is a manufacturer of semiconductors headquartered in Boise, Idaho. Netlist designs and manufactures a wide variety of computing products and possesses an extensive patent portfolio. It is headquartered in Irvine, California.

In June of 2022, Netlist sued Micron in the Eastern District of Texas for infringement of multiple patents, including U.S. Patent Nos. 11,232,054 (the "'054 Patent") and 11,016,918 (the "'918 Patent"). Micron asserts that, prior to the initiation of the suit, Samsung—a nonparty—had filed persuasive petitions at the Patent Trial and Appeal Board (the "PTAB") of the United States Patent and Trademark Office (the "USPTO") challenging the validity of the two patents. *See, e.g.*, Dkt. 19-1, at 7. Netlist, apparently, did not find the petitions persuasive.

In any case, at Micron's request, the PTAB initiated *inter partes* review of the patents in December 2022.[1] In May 2023, Micron asked Netlist to stay the district court proceedings pending the outcome of the PTAB's review. Netlist refused. Then, in December 2023, the PTAB issued decisions finding the '054 Patent and the '918 Patent obvious, and therefore invalid. In response, Micron asked Netlist to drop the patents from its case. Again, Netlist refused, insisting on taking the patents to trial.

---

[1] *Inter partes* review "begins when a person other than the patent owner files a petition with the [USPTO], which is ultimately reviewed by the [PTAB]." 152 Am. Jr. Trials 349, § 3 (Originally published in 2017). *Inter partes* review typically involves a party who has been sued for patent infringement. *Id.* That party petitions the PTAB, requesting a finding that the patent asserted against them be canceled "as being not novel under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 based on prior art . . . ." *Id.* The duty of the PTAB in an *inter partes* review is to decide whether a contested patent is valid. *Id.* at § 15.

### B. Procedural Background

Believing Netlist's actions to be taken in bad faith, Micron sued Netlist in Idaho state court in January 2024, alleging violation of the Idaho Bad Faith Assertions of Patent Infringement Act (the "Act"). Idaho Code § 48-1701 *et seq.* Specifically, Micron claims that Netlist knew the '054 Patent and the '918 Patent were invalid, but chose to litigate them anyway, thereby costing Micron time and resources.

Shortly after Micron initiated its suit, Netlist removed the action, claiming this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338, or alternatively under 28 U.S.C. § 1442(a)(2). Dkt. 1. Then, Netlist moved the Court to dismiss this case or transfer it to the Eastern District of Texas—the location of the underlying patent litigation. Dkt. 12. Micron responded to Netlist's motion, and simultaneously moved the Court to seal various portions of its response and the exhibits filed therewith on the basis that they contain sensitive business information and information about settlement negotiations. Dkt. 17. Three days later, Micron filed a Motion to Remand, asking the Court to send this case back to state court because neither of Netlist's asserted grounds, nor any other grounds, afford the Court subject matter jurisdiction. Dkt. 19.[2] Micron also requests attorney's fees. Dkt. 19-1, at 26.

---

[2] The Court notes that the parties had another case before this Court that followed a very similar trajectory. *See Micron Technology, Inc. et al. v. Netlist, Inc.*, 1:24-cv-00001-DCN (the "First Case"). There, Netlist sued Micron for patent infringement of two other patents in the Western District of Texas. Micron believed Netlist to be acting in bad faith, so it sued Netlist in Idaho state court, claiming violation of the Act. Netlist removed to this Court and requested dismissal or transfer to Texas. Micron responded and also requested that the Court seal portions of its response. Micron also moved for remand to Idaho state court. There, the Court granted Micron's Motion to Remand and Motion to Seal and denied Netlist's Motion to Dismiss or Transfer as moot. Here, for the reasons explained below, the Court takes the same course.

### III. LEGAL STANDARDS

**A. Jurisdiction Under 28 U.S.C. §§ 1331 and 1338**

Under 28 U.S.C. § 1331, federal district courts have subject matter jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1338(a), this jurisdiction extends to "any civil action arising under any Act of Congress relating to patents[.]" Further, § 1338(a) makes clear that federal subject matter jurisdiction over actions arising from acts relating to patents is exclusive. *Id.*

"For statutory purposes, a case can arise under [patent] law in two ways. Most directly, a case arises under [patent] law when [patent] law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, in certain circumstances, "a claim may arise under patent laws even where patent law did not create the cause of action . . . ." *Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1333 (Fed. Cir. 2013) (cleaned up).[3] Such circumstance exists where the action involves a patent law issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Notably, the Supreme Court describes this category of cases as "special and small." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

---

[3] Whether an action arises under the scope of § 1338 "presents an issue that is unique to patent law." Courts should rely on Federal Circuit law, and not regional law when evaluating such issues. *See, e.g.*, *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016).

### B. Jurisdiction Under 28 U.S.C. § 1442(a)(2)

Section 1442(a) allows "owners of federally derived property rights to remove a cause of action to federal court—even where a federal officer is not a defendant—if the action 'affects the validity of any law of the United States.'" *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 647 (Fed. Cir. 2015) (quoting § 1442(a)(2)). Proper removal under § 1442(a)(2) requires that "(1) an action be instituted in state court; (2) the action be against or directed to the holder of a property right; (3) the property right be derived from a federal officer; and (4) the action would 'affect' the validity of a federal law." *Id.*

### C. Sealing

The public has a general right to "inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right, however, is not absolute. *Id.* at 598. Certain public records—like grand jury transcripts and warrant materials related to pre-indictment investigations—are "traditionally kept secret," and are entirely exempt from the public's right to access. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). When dealing with documents that fall outside of the "traditionally-kept-secret" category, Courts strongly presume accessibility. *Id.*

A party seeking to seal non-secret documents must proffer "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure[.]" *Id.* at 1178–79 (cleaned up). A court that decides to seal typically accessible documents "must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.*

at 1179.

Courts have typically found it appropriate to seal documents that may serve as "sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. It is also common for Courts to seal documents that disclose settlement discussions. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) ("[C]ourts have granted protective orders to protect confidential settlement agreements."). This is because "[c]onfidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties." *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993). Thus, "[s]ound judicial policy fosters and protects this form of alternative dispute resolution." *Id.*; *see also* Fed. R. Evid. 408 (protecting settlements and settlement offers from use to prove liability).

## IV. ANALYSIS

The Court will first analyze whether it has jurisdiction under 28 U.S.C. §§ 1331 and 1338. Next, it will discuss whether it has jurisdiction under 28 U.S.C. § 1442(a)(2). Then, the Court will turn to Micron's Motion to Seal. Finally, the Court will briefly address Micron's request for attorney's fees and Netlist's Motion to Dismiss or Transfer.

### A. Jurisdiction Under 28 U.S.C. §§ 1331 and 1338

Netlist's primary removal argument is that this case falls into the "special and small" category of cases wherein a claim arises under patent law even though patent law does not create the cause of action. Dkt. 18, at 8–10. As already noted, to agree with Netlist, the Court must find that a patent law issue is "(1) necessarily raised, (2) actually disputed, (3)

substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (hereinafter "*Gunn* Prongs"). Federal jurisdiction is proper only where "all four of these requirements are met." *Id*.

The Court considers each of the *Gunn* Prongs in turn.

### 1. Whether a Patent Law Issue is Necessarily Raised

In *Globetrotter Software, Inc. v. Elan Comput. Group, Inc.*, 362 F.3d 1367, 1376–77 (Fed. Cir. 2004), the Federal Circuit made clear that success under a state bad-faith statute requires a plaintiff to show that the challenged assertion was "objectively baseless." This means "no reasonable litigant could realistically expect success on the merits." *Id.* (cleaned up). Further, a plaintiff bringing a state-law bad-faith claim must make this showing even if objective baselessness is not otherwise an element of the state-law tort claim. *Id.* at 1374. Otherwise, the claim is subject to federal preemption. *Id.* Questions of objective baselessness, in turn, revolve around patent validity and infringement, and clearly raise patent law issues. *See Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018).

Micron contends that because the Act does not require it to make any showing regarding validity or infringement, there is no patent issue necessarily raised here. Dkt. 19-1, at 16–17. Further, it argues that even if questions of validity were raised, because the PTAB has already found the '054 Patent and the '918 Patent to be invalid, there is no issue of patent law remaining. Dkt. 19, at 9–10.

Regarding the necessity of resolving validity and infringement questions, *Globetrotter* makes clear that to succeed on its bad-faith claim, Micron must establish that

Netlist's assertion was objectively baseless. 362 F.3d at 1376–77. And *Maxchief* makes clear that resolving questions of objective baselessness will require the reviewing court to consider questions of validity and infringement. *Maxchief*, 909 F.3d at 1140 n.3.

Regarding Micron's argument that the PTAB determination forecloses questions of validity, as noted by Netlist, PTAB decisions have no binding effect until they are either affirmed, or the adversely impacted party waives its appeal rights. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023). It does not appear that either of those outcomes has taken place here. What's more, and as the Court noted in the First Case, a finding of invalidity is not equivalent to a finding of objective baselessness. In this case, the reviewing court will not need to rehash the PTAB's finding that the '054 Patent and the '918 Patent are invalid. But it will need to determine whether a reasonable litigant could realistically believe the patents to be valid, knowing all that Netlist knew. Even if it were binding, the PTAB's decision did not answer that question, and assessing it will require the reviewing court, at least peripherally, to take up questions regarding the validity of the two patents at issue. Such questions are issues of patent law. Therefore, this case necessarily raises patent law issues and the first requirement for removal under 28 U.S.C. § 1338 is satisfied.

### 2. *Whether a Patent Law Issue is Actually Disputed*

The parties dispute whether a reasonable litigant could realistically believe the '054 Patent and the '918 Patent were valid. As elucidated in *Globetrotter*, Micron *must* argue a reasonable litigant could not realistically believe such patents were valid to assert a claim under a state bad-faith statute. 362 F.3d at 1374. And, in its briefing, Netlist attests that it

asserted the patents good faith. It also affirms its intent to appeal the findings of the PTAB. Dkt. 21, at 14–15. Thus, the patent law issues here are clearly disputed.

Micron again raises its argument that because the PTAB found the two patents to be invalid, no issue of patent law is or can be actually disputed. Dkt. 19-1, at 18. But as the Court stated above, even if the PTAB's invalidity determinations were binding, they would not be sufficient to establish objective baselessness. Micron's argument fails.

Because the parties dispute an issue of patent law, this second *Gunn* Prong is satisfied.

### 3. Whether the Patent Law Issue is Substantial

For an issue to be sufficiently substantial under the test from *Gunn*, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue . . . ." 568 U.S. at 260. Instead, courts are to look "to the importance of the issue to the federal system as a whole." *Id.* An issue is important to the federal system as a whole where it presents "potential for inconsistent judgments between state and federal courts." *Maxchief*, 909 F.3d at 1140 n.3. This potential must be based on real-world patent litigation results, not hypothetical inconsistencies. *Gunn*, 568 U.S. at 261–62.

Netlist argues that allowing a state court to preside in this case creates a risk of inconsistent judgments between state and federal courts. Dkt. 21, at 16–17. Specifically, Netlist notes that it has appealed (or plans to appeal) the PTAB's validity determinations. *Id.* at 16. It then states that if it prevails in its appeal and then again at a jury trial, its suit—by definition—could not have been brought in bad faith. *Id.* Netlist suggests "[i]n this case,

Micron is asking a reviewing court to find the exact opposite." *Id.* Netlist also raises concerns that in the underlying patent case, Micron is seeking attorney's fees pursuant to 35 U.S.C. § 285. *Id.* at 15–16. It then claims that the standard for recovering attorney's fees under § 285 mirrors the standard imposed by the Act. Thus, Netlist posits, because the Eastern District of Texas *could* still resolve the underlying patent suit in Netlist's favor and because it *could* decline to award attorney's fees to Micron, allowing the bad-faith claim to proceed before a state court creates a real risk of inconsistent judgments.

Netlist's argument relies heavily on *New Life Ventures v. Locke Lord LLP*, 2019 WL 13212632 (E.D. Tex. Sept. 27, 2019), wherein New Life Ventures, Inc. ("New Life") was denied attorney's fees after successfully defending an infringement allegation, then subsequently asserted a claim of malicious prosecution under Florida law. *Id.* at *1. The case was removed to federal court, then transferred to the Eastern District of Texas—the court that presided over the underlying patent infringement suit. The Eastern District of Texas found that the malicious prosecution claim raised substantial federal issues in part because the standard governing New Life's malicious prosecution claim mirrored the standard for attorney's fees under § 285 *and* because the Eastern District of Texas had already determined that New Life fell short of that standard. *Id.* at *3. Thus, "[r]esolution of New Life's claim would require a reopening of the issues already decided under § 285." *Id.*

The applicability of *New Life* to the facts at hand is limited in two significant ways. First, the burden imposed by the fee-shifting provision in § 285 is *not* the same as the standard imposed under Idaho's bad-faith assertion law—it is lower. *See Katana Silicon Techs. LLC v. Micron Tech., Inc.*, 671 F. Supp. 3d 1138, 1153–54 (D. Idaho 2023); *see*

*also* 35 U.S.C. § 285 (allowing fee-shifting in "exceptional cases"); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014) (stating that establishing the exceptionality of a case for purposes of fee shifting requires "something less than bad faith") (cleaned up). Second, and more importantly, in *New Life*, resolution of the state law claim would have required the Eastern District of Texas to address for a second time questions it had already conclusively resolved. 2019 WL 1321263, at *3. In other words, the claim sought to overturn the result of the prior patent litigation, creating a substantial federal question. *Id.* But here, to the knowledge of the Court, there has been no conclusive resolution of any issue in the underlying Texas litigation between the parties. Thus, as it stands, there is no real-world result that an Idaho court could contradict a prior ruling in the Texas case by ruling on Micron's bad faith claim.

Netlist urges the Court to take a softer approach in this analysis. It argues that the existence of a *possibility* of inconsistent judgments is sufficient to establish a substantial federal issue worthy of jurisdiction under § 1338. Dkt. 18, at 16. But possibilities are not enough. The court in *New Life* made this clear when it distinguished the facts there from those at issue in *Gunn*, stating: "In *Gunn*, the Supreme Court found that a malpractice claim stemming from a patent infringement suit did not raise a significant federal issue in part because resolution of the claim would 'not change the real-world result of the prior federal patent litigation.'" *New Life*, 2019 WL 13212632, at *3 (quoting *Gunn*, 568 U.S. at 261). "By contrast," the court continued, "New Life expressly seeks to overturn a result of the prior federal patent litigation—denial of its attorney's fees." *New Life*, 2019 WL 13212632, at *3. This case is more like *Gunn* than *New Life* for the simple reason that there is no prior

federal patent decision relevant to the inquiry at hand. Further, adopting Netlist's approach would mean finding a substantial federal issue to be present in *any instance* where a state court and a federal court are ruling on similar, but distinct, questions, and the federal court has yet to rule. It is the opinion of the Court that such a course would stretch the Supreme Court's standard from *Gunn* a bridge too far.

Beyond its case-specific concerns, Netlist raises generalized fears that state laws like the Act are incompatible with federal patent law and may "add potential, divergent, and potentially more stringent requirements to bring a federal lawsuit for patent infringement than those already imposed by federal law." Dkt. 21, at 17 (quoting *New Life*, 2019 WL 13212632, at *4). But Netlist's speculative fears were adequately addressed in *Gunn*. There, the Supreme Court noted that federal courts are not bound by state-court resolutions of patent-adjacent questions. 568 U.S. at 262. It also opined that if a particular question of patent law that first arises in a state court is truly substantial, it will arise with enough frequency to eventually be settled by the Federal Circuit. *Id.*; *see also Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1364–69 (Fed. Cir. 2019). Further, in *Katana*, this Court addressed the consistency of the Act with federal patent law *ad nauseum*. 671 F. Supp. 3d at 1153–61. For reasons outlined both in *Katana* and herein, the Court does not share Netlist's fears.

Whether Netlist's assertions of the '051 Patent and the '918 Patent were objectively baseless is not an issue of importance to the federal system as a whole. It raises no potential for inconsistent judgments between state and federal courts and, contrary to Netlist's assertions, allowing a state court to decide the issue will not cast federal patent law into

disarray. Netlist has failed to satisfy this third requirement for the exercise of jurisdiction under 28 U.S.C. § 1338. Thus, under *Gunn*, jurisdiction does not lie. 568 U.S. at 258.

### 4. Whether Removal Would Disrupt the Federal-State Balance

Finally, even if Netlist had satisfied the substantiality prong, its removal attempt would buckle under the final, federal-state balance prong. States have a legitimate interest in protecting their citizens from unsavory business practices. Like the Federal Circuit, the Court notes that finding a federal question simply because a dispute "implicates a run-of-the-mill question of infringement or validity would undoubtedly impact the wider balance between state and federal courts." *Inspired Dev. Grp.*, 938 F.3d at 1369. The Federal Circuit elaborated that adoption of such a course would mean "a plaintiff could create a federal jurisdictional hook to avoid state court in any case involving almost any state law claim by doing little more than pleading allegations that involve an embedded infringement or validity analysis." *Id.* This would clearly upset the existing balance between state and federal courts. *See Katana*, 671 F. Supp. 3d at 1150 (noting that more than half of states have adopted statutes outlawing bad-faith patent assertion). It is for this reason that courts regularly decline "to find federal question jurisdiction notwithstanding the presence of an underlying issue of patent law." *NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1348 (Fed. Cir. 2015) (collecting cases).

The logic from *Inspired Dev. Grp.* readily applies here. 938 F.3d at 1364–70. The patent issues disputed by Micron and Netlist are run-of-the-mill and they impact Micron and Netlist alone. Allowing federal jurisdiction over such issues would disrupt the federal-state balance that currently prevails.

MEMORANDUM DECISION AND ORDER – 14

*5. Conclusion*

Micron's bad faith claim necessarily raises an issue of patent law—whether Netlist's assertions of the '051 Patent and the '918 Patent were objectively baseless. The parties dispute this issue. However, because the issue is neither substantial, nor capable of resolution in federal court without disrupting the currently prevailing federal-state balance, the Court cannot exercise jurisdiction under 28 U.S.C. §§ 1331 and 1338.

**B. Jurisdiction Under 28 U.S.C. § 1442(a)(2)**

The Court turns next to whether it has subject matter jurisdiction under 28 U.S.C. § 1442(a)(2). The parties do not dispute that this action was instituted in state court, that it is directed against the holder of a property right, or that the property in question derives from a federal officer. Their disagreement centers on whether the action affects the validity of any federal law.

A lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053–54 (W.D. Wash. 2021). Netlist claims that Micron's suit "directly conflicts with federal law concerning what patent holders can do with their intellectual property." Dkt. 21, at 21 (cleaned up). It argues further that by bringing suit under the Act, Micron is attempting to impose liability upon Netlist without making the objective baselessness showing required by *Globetrotter*. *Id.*

Regarding the alleged conflict between the Act and federal patent law, the Court addressed this exact contention in *Katana*, ultimately holding that "[t]he Act has the same essential purposes as the Patent Act and goes no further than its federal counterpart in

MEMORANDUM DECISION AND ORDER – 15

pursuing them." *Katana*, 671 F. Supp. 3d at 1154. The Court then stated conclusively, "[t]here is no conflict of purpose or objective here." *Id.* Later, the Court stated "[t]he Act does not intrude on Congress' exclusive right to grant patents. Nor does it alter any policy line that congress has expressly drawn . . . . Because the Act is not inconsistent with Congress' express policies, the Court finds that it is not an obstacle to them." *Id.* at 1155. Netlist has offered any argument to cause the Court to reconsider its prior reasoning.

With respect to Netlist's claim that Micron is attempting to impose liability without first making the showing required by *Globetrotter*, the Court begins by noting that Micron has expressly disavowed this allegation. Dkt. 22, at 14 n.6 ("Micron is not attempting to hold Netlist liable without showing objective baselessness."). More importantly, in *Globetrotter*, the Federal Circuit made clear that a bad-faith requirement—which is satisfied by a showing of objective baselessness—is essentially baked-in to any state law imposing liability on a patentholder for communications asserting infringement. 362 F.3d at 1374. Thus, even if the Act does not use the words "objectively baseless," Micron's burden under the statute is no lighter than required under *Globetrotter*.

Because the Act is consistent with federal patent law and is not somehow allowing Micron to skirt the rules, the Court finds that Micron's claim does not affect the validity of any federal law. Accordingly, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1442(a)(2).

### C. Sealing

In Netlist's Motion to Dismiss or Transfer (Dkt. 12), it argues, among other things, that Netlist's contacts with the state of Idaho are insufficient to justify the Court's exercise

of personal jurisdiction. Dkt. 12-1, at 12–19. In response, Micron—which is headquartered in Idaho—contends that its extensive settlement discussions with Netlist and the parties' negotiations over a potential license of a Netlist patent portfolio constitute sufficient grounds from which an Idaho federal court could exercise personal jurisdiction. Dkt. 16, at 9–16.

Because the Court has determined it lacks subject matter jurisdiction, it need not wade into these questions of personal jurisdiction. *See, e.g.*, *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) *and* power over the parties before it (personal jurisdiction) before it can resolve a case.") (emphasis added). However, Micron has asked the Court to seal portions of its response and the attachments thereto that contain sensitive business information and information about settlement discussions. Dkt. 17. Specifically, it asks the Court to seal portions of its Response, Portions of the Declaration of Rebecca Carrizosa in support of its Response (the "Carrizosa Declaration"), and Exhibits B–W to the Carrizosa Declaration (the "Carrizosa Exhibits"). Dkt. 17-1, at 2.

The Court has reviewed Micron's Response, the Carrizosa Declaration, and the Carrizosa Exhibits. The Court finds that the documents and portions of documents that Micron seeks to seal contain sensitive business information about both parties and discuss settlement negotiations in detail. Disclosure of such information could negatively impact the competitive standing of both parties. *See Nixon*, 435 U.S. at 598. Further, the Court notes the public's significant interest in preserving the confidentiality of settlement discussions. *See, e.g.*, *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993). Maintaining the

MEMORANDUM DECISION AND ORDER – 17

confidentiality of settlement negotiations promotes timely and satisfactory conflict resolution. *Id.* Here, that interest outweighs the public interest in document inspection.

For the foregoing reasons, the Court finds that Micron has asserted compelling, fact-supported reasons for sealing the specified documents. Accordingly, Micron's Motion (Dkt. 17) is GRANTED.

### D. Attorney's Fees

In its Motion to Remand, Micron requested attorney's fees. Dkt. 19-1, at 26. Pursuant to 28 U.S.C. § 1447(c), when a federal court remands a case back to state court after removal, an award of attorney's fees may be appropriate. In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court stated fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." The Ninth Circuit has elaborated on this standard, stating, "removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, courts are to consider whether "relevant case law clearly foreclosed the defendant's basis of removal." *Id.* at 1066.

Caselaw interpreting the Act is relatively sparse; and as far is the Court is aware, this case and the First Case constitute the first two times a party has attempted to remove a claim for violation of the Act from state court to federal court. Thus, the Court would be hard-pressed to find that relevant case law clearly foreclosed Netlist's basis for removal. *See id.* While the Court ultimately found that basis to be unsound, it cannot say that it was

MEMORANDUM DECISION AND ORDER – 18

objectively unreasonable. Accordingly, the Court DENIES Micron's request for attorney's fees.

### E. Netlist's Motion to Dismiss or Transfer

Because the Court has determined that it does not have jurisdiction over this case, it must remand this case back to state court. 28 U.S.C. § 1447(c). Accordingly, it DENIES Netlist's pending Motion to Dismiss or Transfer (Dkt. 12) as MOOT. Netlist is free to raise its arguments regarding personal jurisdiction and/or transfer before the state court.

### V. CONCLUSION

Regarding Micron's Motion to Remand (Dkt. 19), the Court finds that Micron's bad faith claim necessarily raises an issue of patent law, and that issue is actually disputed by the parties. However, the issue is not substantial, nor capable of resolution without disrupting the federal-state balance. Accordingly, the Court does not have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. Further, because the Act does not affect the validity of federal patent law, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1442(a)(2). Thus, Micron's Motion to Remand is GRANTED.

Regarding Micron's Motion to Seal (Dkt. 17), the Court finds that Micron has shown compelling, fact-supported reasons to justify sealing the materials specified herein. Accordingly, Micron's Motion to Seal is GRANTED.

Additionally, the Court finds that because relevant caselaw (to the extent any existed) did not clearly foreclose Netlist's removal of this case, an award of attorney's fees is inappropriate.

Finally, because the Court lacks subject matter jurisdiction over this case, it
DENIES Netlist's pending Motion to Dismiss or Transfer (Dkt. 12) as MOOT.

## VI. ORDER

The Court **HEREBY ORDERS**:

a. Micron's Motion to Remand (Dkt. 19) is **GRANTED**.

    i. This case is remanded to the District Court for the Fourth Judicial
District of the State of Idaho, County of Ada.

b. Netlist's Motion to Dismiss or Transfer (Dkt. 12) is **DENIED** as **MOOT**.

c. Micron's Motion to Seal (Dkt. 17) is **GRANTED**.

d. This case is **CLOSED**.

DATED: August 13, 2024

David C. Nye
Chief U.S. District Court Judge